IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| WARREN J. BROWN, #1013153 | § | |
| VS. | § | CIVIL ACTION NO. 6:09cv69 |
| SHAWN LARTY, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Warren J. Brown, an inmate previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The present Memorandum concerns Defendant Larty's motion for summary judgment (docket entry #46) regarding the sole claim remaining in the lawsuit, which involve allegations of excessive use of force that occurred on June 15, 2008. The Plaintiff did not file a response.

Plaintiff's Factual allegations

The Plaintiff's factual allegations were fully developed during an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), conducted on June 14, 2010. On June 15, 2008, the Plaintiff was in a day room with his Bible and shower supplies. He was not intending to attend church services on that day, but the officer escorting inmates to church services said there was room for three or four more inmates. The Plaintiff decided to accept the offer and exited the day room. While waiting in the hall, the Plaintiff was told by another officer to return to the day room. The Plaintiff acknowledged that he became upset and there was an exchange of words. Defendant

1

Officer Shawn Larty told the Plaintiff not to disrespect another officer. Larty told the Plaintiff to turn around in order to be handcuffed. The Plaintiff asked Larty to forget the matter and permit him to return to the day room. He stressed to Larty that the exchange with the other officer was over and it amounted to nothing. Larty, however, repeatedly told the Plaintiff to be quiet and warned him that he would be slammed on the ground if he did not stop talking. Larty finally threw the Plaintiff over on his left side. The Plaintiff testified that he could feel his teeth breaking. Blood started gushing from his mouth, and he could barely speak. He subsequently learned that a nerve in his chin had been cut. A sergeant arrived on the scene, and the Plaintiff was escorted to the infirmary. X-rays revealed that his jaw was fractured in two spots. Several teeth were damaged. He was transported to Hospital Galveston, where he stayed until September 2008. A metal plate was placed in his chin. His jaw was wired shut, and he was placed on a liquid diet. He lost twenty pounds while on the liquid diet. He stressed that he did not understand why Larty slammed him to the ground. They had a cordial conversation earlier that morning. He expressed the opinion that Larty's actions did not make sense.

Various prison records were submitted during the hearing. Medical records reveal that Nurse Hart examined the Plaintiff after the incident and observed a laceration to his lower left jaw. He had no other complaints other than facial pain. The wound was cleaned and sutured. By June 27, 2008, he had been transported to the University of Texas Medical Branch in Galveston. A CT scan revealed mandibular body fractures. Surgery was necessary, which included the use of jaw wires.

Prison use of force records reveal that Assistant Warden Baker found that force was necessary but Larty placed the Plaintiff head first on the ground, which resulted in a laceration requiring seven sutures and a fractured jaw. On August 18, 2008, Warden Rupert found that the use of force was "excessive/unnecessary - provoked with serious injuries." Larty was reprimanded and placed on disciplinary probation for nine months.

## Larty's Motion for Summary Judgment

Defendant Larty filed a motion for summary judgment (docket entry #46) on October 20, 2010. He argued that his actions towards the Plaintiff on June 15, 2008, did not constitute excessive use of force. More specifically, he asserted that he did not use force maliciously and sadistically for the very purpose of causing harm, in violation of the Eighth Amendment. He further argued that he is entitled to qualified immunity. In support of the motion, he submitted his own affidavit, along with the use of force report of physical injury.

Larty's affidavit included the following discussion of the facts:

On June 15, 2008, I worked at the Michaels Unit of the Texas Department of Criminal Justice as a Correctional Officer III. At about 7:30 a.m., Officer Steve Banker, CO II, and I were escorting Plaintiff Warren Brown, #1013153, from 8 L-Pod to the front desk. Plaintiff was in handcuffs. While attempting to place Plaintiff in the holding cage and as Officer Banker was looking for keys to the cage, Brown pulled away from Officer Banker and approached me and spit in my face. I then attempted to restrain Plaintiff's upper body. I followed our use of force policy that teaches officers that if an inmate resists, even when he is in handcuffs, this can be a dangerous situation, because the inmate can still assault officers. We are taught to try to put the inmate up against the wall so that he cannot try to head butt or spit at the officer. I tried to place Plaintiff up against the wall, but the Plaintiff pulled away from me and attempted to head butt me. We are taught that if we need to control the inmate, we are to get him to the ground and restrain him there so that he cannot assault the officers. I managed to get Plaintiff on the ground. I tried to make sure that he landed on his chest, but he fell head first. Plaintiff was difficult to control because he was combative and much larger than me. At the time, I was not aware of any injury to Plaintiff. Per policy, other Correctional Officers escorted Plaintiff to the infirmary.

My actions were in accordance with TDCJ use of force policies. I believe that I acted as a reasonable public official would have acted. I also feel that a reasonable public official would not have believed that my actions were excessive.

The second exhibit attached to the motion was the Plaintiff's use of force injury report that was prepared following the incident. The report documents that his face was cut and that seven stitches were needed on the left side of the chin. No other injuries were documented at that time.

The details of Larty's legal arguments as applied to the facts of this case will be fully discussed in the Discussion and Analysis section of this Memorandum. It is again noted that the Plaintiff did not file a response to the motion.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.*, 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert.*

*denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The issue before the Court is whether the Plaintiff was the victim of excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury

5

is relevant to but not dispositive of the excessive force claim. *Id.* On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992).

The first *Hudson* factor to consider is the extent of the injury suffered. The competent summary judgment evidence presented during the *Spears* hearing revealed that the Plaintiff suffered significant injuries, including a laceration to his chin that required seven sutures and a broken jaw. In the motion for summary judgment, Larty asserted that the Plaintiff's injuries were not excessive and that he had not provided any competent summary judgment evidence supporting his claims as to the extent of his injuries. Larty ignored the abundance of medical records that documented the Plaintiff's injuries. The Court finds Larty's assertions somewhat disingenuous in light of the medical records.

The second *Hudson* factor concerns the need for the application of force. The Plaintiff admitted during the *Spears* hearing that he became upset and that there was an exchange of words. He did not comply with orders. Larty's affidavit went on to note that the Plaintiff proceeded to pull away from Officer Banker, approach Larty and spit in his face. The Plaintiff's actions warranted a response from Larty, including the use of some force.

The third *Hudson* factor is the relationship between the need and the amount of force used. Larty initially tried to place the Plaintiff against the wall, in accordance with prison policy, to keep the Plaintiff from head butting him or spitting in an officer's face. The Plaintiff pulled away and attempted to head butt him. Larty then followed prison policy by placing the Plaintiff on the floor. The bone of contention in this case, however, concerns how Larty placed the Plaintiff on the floor. Larty asserted

6

that he tried to place the Plaintiff on the floor chest first, but the Plaintiff fell head first. This was the determining factor in why Larty was disciplined. It is the reason the Plaintiff suffered serious injuries.

The fourth *Hudson* factor is the threat reasonably perceived by responsible officials. Larty has submitted competent summary judgment evidence supporting an inference that he felt threatened by the Plaintiff spitting in his face, attempting to head butt him, and struggling with him. Larty noted that the Plaintiff was difficult to control because he was combative and much larger.

The final *Hudson* factor is any efforts made to temper the severity of a forceful response. Larty engaged in a number of acts in an effort to temper the severity of the forceful response. He initially applied handcuffs to control the Plaintiff. If the Plaintiff had cooperated, then force would have been avoided. Larty next attempted to place the Plaintiff against the wall. Once again, if the Plaintiff had cooperated, then major force could have been avoided.

Overall, the competent summary judgment evidence reveals that Larty engaged in some actions that were appropriate. The dispositive factor with respect to the present motion concerns how Larty placed the Plaintiff on the ground, head first, which resulted in the Plaintiff's serious injuries. The trier of fact will have to decide whether the way the Plaintiff was placed on the ground was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 7.

Defendant Larty also argued that he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought

consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The Fifth Circuit has accordingly held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

The facts of this case require that the traditional two-step approach be employed. The Court has already found that the Plaintiff has satisfied the first step. He has shown a violation of his constitutional rights. The second issue is whether Larty has shown that his conduct was objectively reasonable in light of the rules clearly established at the time of his actions. He asserted that he believes that his actions were in accordance with TDCJ use of force policies and that he feels that a reasonable public official would not have believed that his actions were excessive. There are some facts, however, that undermine his arguments. The Plaintiff testified at the *Spears* hearing that Larty threatened to slam him if he did not stop talking. This gives rise to a inference that Larty was

predisposed to slamming him on the ground from the beginning. It is also noted that the Plaintiff testified that Larty taunted him the next time they met, which, if true, reveals evidence as to his character and whether he acted maliciously and sadistically. The dispositive factor, once again, concerns how Larty placed the Plaintiff on the ground. He placed him on the ground head first, which caused the Plaintiff's injuries, and led to Larty being disciplined. A jury may well find that placing him head first on the ground was an accident, but a jury may also find that it was intentional and unreasonable. This is a genuine issue of a material fact in dispute that precludes summary judgment based on qualified immunity. In conclusion, the motion for summary judgment should be denied.

As a final matter, it is noted that the Court has not heard from the Plaintiff since the *Spears* hearing. The Court could have dismissed the case for want of prosecution because the Plaintiff failed to respond to the motion for summary judgment. *Martinez v. Johnson*, 104 F.3d 769 (5th Cir. 1997). The Plaintiff likewise failed to respond to an order to show cause why he did not comply with disclosure orders. His witness and exhibit lists are due no later than December 6, 2010. The Plaintiff is placed on notice that the lawsuit may be dismissed if he does not comply with orders. It is therefore

**ORDERED** that the motion for summary judgment (docket entry #46) is **DENIED**. It is further

**ORDERED** that the motion to seal privileged documents (docket entry #47) is **GRANTED**.

**So ORDERED and SIGNED this 16th day of November, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE